POMERANTZ LLP
Gustavo F. Bruckner
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
gfbruckner@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERNESTO VELA, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>                    v.<br><br>LEXINFINTECH HOLDINGS LTD., JAY WENJIE XIAO, CRAIG YAN ZENG, KEYI CHEN, YIBO SHAO, and JARED YI WU,<br><br>                              Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Ernesto Vela ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other

matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding LexinFintech Holdings Ltd. ("Lexin" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired: (a) Lexin American depositary shares ("ADSs") pursuant and/or traceable to the Company's initial public offering conducted on or about December 21, 2017 (the "IPO" or "Offering"); or (b) Lexin securities between December 21, 2017 and August 24, 2020, both dates inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Lexin was founded in 2013 and is headquartered in Shenzhen, the People's Republic of China ("China"). The Company was formerly known as

Staging Finance Holding Ltd. and changed its name to LexinFintech Holdings Ltd. in March 2017.

3.      Lexin, through its subsidiaries, operates as an online consumer finance platform for young professionals in China, offering various loans and financial services to consumers.

4.      On November 13, 2017, Lexin filed a registration statement on Form F-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on December 20, 2017 (the "Registration Statement").

5.      On December 21, 2017, pursuant to the Registration Statement, Lexin's ADSs began trading on the NASDAQ Global Market ("NASDAQ") under the symbol "LX."  That same day, Lexin filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (collectively, the "Offering Documents").

6.      Pursuant to the Offering Documents, Lexin issued 12,000,000 of its ADSs, representing 24,000,000 of its Class A ordinary shares, to the public at the Offering price of $9.00 per share for approximate proceeds of $100,440,000 to the Company, after applicable underwriting discounts and commission.

7.      The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance

with the rules and regulations governing their preparation.  Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lexin overstated its growth prospects and metrics; (ii) Lexin engaged in undisclosed related party transactions; (iii) following the COVID-19 pandemic, Lexin maintained low delinquency rates by providing borrowers in default new funds to make payments; and (iv) as a result, the Offering Documents and the Company's public statements were materially false and/or misleading and failed to state information required to be stated therein.

8.    On August 25, 2020, shortly after markets opened, Grizzly Research ("Grizzly") issued a research report on Lexin alleging, among other issues, that the Company reported "unfathomably low" delinquency rates by providing borrowers in default new funds to make payments and that Lexin engaged in undisclosed related party transactions.  The Grizzly report further alleged that a review of Lexin's web traffic called into question the Company's purported growth.

9.    On this news, Lexin's ADS price fell $0.47 per share, or 5.52%, to close at $8.04 per share on August 25, 2020.

10.    As of the time this Complaint was filed, the price of Lexin ADSs continues to trade below the Offering price, damaging investors.

11.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Lexin's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.    The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the subsequent damages took place in this Judicial District.   Pursuant to Lexin's most recent annual report on Form 20-F, as of December 31, 2019, there were 359,417,329 of the Company's ordinary shares issued and outstanding, consisting of 258,690,272 Class A ordinary shares.   Lexin's ADSs, each representing two of the Company's Class A ordinary shares, trade on the NASDAQ.   Accordingly, there are presumably hundreds, if not thousands, of

investors in Lexin's ADSs located within the U.S., some of whom undoubtedly reside in the State of New Jersey.

15.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

16.    Plaintiff, as set forth in the attached Certification, acquired Lexin ADSs pursuant and/or traceable to the Offering Documents issued in connection with the Company's IPO, and/or purchased or otherwise acquired Lexin securities at artificially inflated prices during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.    Defendant Lexin is organized under the laws of the Cayman Islands, with principal executive offices located at 27/F CES Tower, No. 3099 Keyuan South Road, Nanshan District, Shenzhen 518057, China.  Lexin ADSs trade in an efficient market on the NASDAQ under the symbol "LX."

18.    Defendant Jay Wenjie Xiao ("Xiao") has served as Lexin's Chief Executive Officer and a Director of the Company at all relevant times.  Xiao signed or authorized the signing of the Offering Documents filed with the SEC.

19.    Defendant Craig Yan Zeng ("Zeng") has served as Lexin's Chief Financial Officer at all relevant times.  Zeng signed or authorized the signing of the Offering Documents filed with the SEC.

20.    Defendants Xiao and Zeng are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

21.    The Exchange Act Individual Defendants possessed the power and authority to control the contents of Lexin's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of Lexin's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Lexin, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

22.    Lexin and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

23.     Defendant Keyi Chen ("Chen") served as a Director of Lexin at the time of the IPO.  Chen signed or authorized the signing of the Offering Documents filed with the SEC.

24.     Defendant Yibo Shao ("Shao") served as a Director of Lexin at the time of the IPO.  Shao signed or authorized the signing of the Offering Documents filed with the SEC.

25.     Defendant Jared Yi Wu ("Wu") served as a Director of Lexin at the time of the IPO.  Wu signed or authorized the signing of the Offering Documents filed with the SEC.

26.     Defendants Xiao, Zeng, Chen, Shao, and Wu are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

27.     As directors, executive officers and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Lexin ADSs in the IPO for their own benefit and the benefit of Lexin. The Securities Act Individual Defendants were key members of the IPO working group and executives of Lexin who pitched investors to purchase the shares sold in the IPO, including in IPO road shows.

28.     The Exchange Act Defendants and the Securities Act Individual Defendants are sometimes collectively, in whole or in part, referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

29.     Lexin was founded in 2013 and is headquartered in Shenzhen, China. The Company was formerly known as Staging Finance Holding Ltd. and changed its name to LexinFintech Holdings Ltd. in March 2017.

30.     Lexin, through its subsidiaries, operates as an online consumer finance platform for young professionals in China.  The Company operates Fenqile.com, a retail and online consumer finance platform that offers installment purchase loans, personal installment loans, and other loan products, as well as provides online direct sales with installment payment terms; and Le Card, a membership platform, which offers savings, benefits, and membership privileges to food and beverage, apparel, hospitality, and leisure sectors.  The Company also matches customer loans with diversified funding sources, including individual investors on its Juzi Licai online investment platform, third-party commercial banks, consumer finance companies, institutional funding partners in its direct lending programs, investors of its asset-backed securities, and other licensed financial institutions.

31.     On November 13, 2017, Lexin filed a registration statement on Form F-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on December 20, 2017 (the "Registration Statement").

32.    On December 21, 2017, pursuant to the Registration Statement, Lexin's ADSs began trading on the NASDAQ under the symbol "LX."  That same day, Lexin filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

33.    Pursuant to the Offering Documents, Lexin issued 12,000,000 of its ADSs, representing 24,000,000 of its Class A ordinary shares, to the public at the Offering price of $9.00 per share for approximate proceeds of $100,440,000 to the Company, after applicable underwriting discounts and commission.

**Materially False and Misleading Statements Issued in the Offering Documents**

34.    The Offering Documents touted Lexin's unique growth prospects, representing, in relevant part, that "[p]rivate consumption in China is growing rapidly, allowing for the rapid development of the online consumer finance market"; that, "[d]espite growing consumption levels, the consumer finance market in China is still highly underdeveloped and underpenetrated"; that "[t]he educated young adult segment represents a sizeable consumer finance market with enormous growth potential"; and that Lexin was uniquely positioned to capitalize on these growth opportunities because of its "competitive strengths [that] are essential to [its] success and differentiate [it] from [its] competitors," including the Company's status as "a leading and fast-growing online consumer finance platform that is well positioned to capture the long-term growth potential of educated young adults in China," its

"advanced and customized credit risk management," its "superior customer experience supported by an efficient and robust technology platform," its "targeted and cost-effective customer acquisition strategy," its "diversified and scalable funding," and its "self-reinforcing and demographically targeted ecosystem, creating powerful network effects."

35.     Additionally, the Offering Documents touted Lexin's growth strategies, representing, in relevant part, that the Company's "target customer cohort, educated young adults aged between 18 and 36 in China, features young people with high income potential, high educational background, high consumption needs, a strong desire to build their credit profile, and an appreciation for efficient customer experience"; that Lexin has a "scalable and stable funding to meet [its] customers' needs and grow [its] platform"; that Lexin "adopt[ed] a targeted and cost-effective customer acquisition strategy by leveraging [its] e-commerce channel, word-of-mouth referrals, as well as cooperation with reputable commercial banks"; that Lexin's "educated young adult customers are often geographically concentrated and socially connected, which enables [Lexin] to achieve effective customer acquisition through customer referrals"; and that Lexin "cooperate[s] with commercial banks, for example, by promoting co-branded credit cards issued by the bank to reach potential customers."

36.    Attesting to Lexin's successful implementation and execution of its growth strategy, the Offering Documents touted the Company's user growth metrics, stating, in relevant part, that Lexin "had approximately 3.0 million active customers in 2016 and 3.3 million active customers in the nine months ended September 30, 2017, representing a 103% increase and a 34% increase from 2015 and the nine months ended September 30, 2016, respectively"; that, "[a]s of September 30, 2017, [Lexin] had over 6.5 million customers with an approved credit line and over 20 million registered users"; that, "[a]s of September 30, 2017, [Lexin's] target customer group represented over 90% of [its] customer base"; and that, "[i]n 2016 and the nine months ended September 30, 2017, approximately 36% and 45%, respectively, of [Lexin's] new customers registered on [its] platform using a referral code obtained from an existing customer."

37.    The Offering Documents also discussed Lexin's related party transactions, disclosing, in relevant part, that Lexin "operate[s] [its] relevant business through [its] variable interest entities and their subsidiaries based on a series of contractual arrangements"; that, "[o]n December 16, 2015, [Lexin] provided a loan in the amount of US$2.5 million to [Defendant] Xiao for the purpose of allowing Mr. Xiao to make potential investments on behalf of [Lexin]"; that, "[o]n May 24, 2016, [Lexin], through [Defendant] Xiao, entered into an agreement with Finnov Private Limited, or Finnov, to subscribe and purchase 11,363,637 series A

preferred shares of Finnov," in addition to a subsequent transaction related to Finnov; that "[c]ertain individual directors and officers and/or [their] immediate family members participate in [Lexin's] investment programs offered to individual investors on *Juzi Licai*"; that, "[i]n 2015, [Lexin] entered into a strategic cooperation agreement with JD.com and a series of related agreements pursuant to which [Lexin] source[s] [its] products sold on [its] e-commerce channel and receive[s] fulfillment and storage service from JD.com"; and that "[c]ertain of [Lexin's] existing shareholders, including K2 Partners entities, JD.com Asia Pacific Investment Limited and affiliates and certain other existing shareholders, have subscribed for, and have been allocated by the underwriters, 2,960,000 ADSs in th[e] [O]ffering at the [IPO] price."

38.     The statements referenced in ¶¶ 34-37, *supra*, were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) Lexin overstated its growth prospects; (ii) Lexin engaged in undisclosed related party transactions; and (iii) as a result, the Offering Documents

were materially false and/or misleading and failed to state information required to be stated therein.

## Materially False and Misleading Statements Issued During the Class Period

39.     The Class Period begins on December 21, 2017, when Lexin's securities began publicly trading on the NASDAQ pursuant to the materially false or misleading statements or omissions in the Offering Documents.

40.     On April 26, 2018, Lexin filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 20-F").  With respect to Lexin's customer base, the 2017 20-F represented, in relevant part, that, "[f]rom [Lexin's] inception in August 2013 through the end of 2017, [Lexin] originated loans to over 5.5 million customers on a cumulative basis"; that, "[i]n 2015, 2016 and 2017, [Lexin] originated loans to approximately 1.5 million, 3.0 million and 4.1 million active customers through [its] platform, representing a compound annual growth rate, or CAGR, of 66%"; that Lexin's "online consumer finance platform features a high proportion of repeat customers"; that, "[o]f all active customers on [Lexin's] platform in 2015, 2016 and 2017, approximately 63%, 74% and 80%, respectively, were repeat customers who had made at least one transaction on [Lexin's] platform before in the same year or in the previous year"; and that, "[a]s of December 31,

2017, [Lexin] had over 7.6 million customers with an approved credit line and over 20 million registered users."

41.     In this same respect, the 2017 20-F further touted, in relevant part, that, "[a]s of December 31, 2017, [Lexin's] target customer group represented over 90% of [its] customer base"; that Lexin has "successfully accumulated a large customer base and achieved deep market penetration among educated young adults in China"; that, "[h]istorically, [Lexin] attracted educated young adults customers through various channels, mainly [Lexin's] e-commerce channel and operational team"; and that, "[w]ith the growth of [Lexin's] business, [the Company's] customer acquisition efforts have become primarily driven by [Lexin's] e-commerce channel, word-of-mouth referrals, and cooperation with reputable commercial banks, other e-commerce channel and network service platform."

42.     With respect to Lexin's e-commerce channel, Fenqile.com, the 2017 20-F represented, in relevant part, that "[t]he GMV [gross merchandise value] of [Lexin's] e-commerce channel amounted to RMB2.7 billion in 2015, RMB4.0 billion in 2016 and RMB4.1 billion (US$632 million) in 2017"; that, "[i]n 2016 and 2017, [Lexin] originated RMB22.2 billion and RMB47.7 billion (US$7.3 billion) in loans, representing a 115 % increase"; and that, "[a]s of December 31, 2015, 2016 and 2017, the average customer loan balance was RMB2,881, RMB4,838 and RMB6,580 (US$1,011), respectively."

43.     With respect to Lexin's disclosure of related party transactions, the 2017 20-F contained substantively the same statements as referenced in ¶ 37, *supra*, while disclosing additional information related to shareholder agreements and registration rights.

44.     Appended as exhibits to the 2017 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Exchange Act Individual Defendants certified that "[t]he [2017 20-F] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and "[t]he information contained in the [2017 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

45.     On April 30, 2019, Lexin filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 20-F").  With respect to Lexin's customer base, the 2018 20-F represented, in relevant part, that, "[f]rom [Lexin's] inception in August 2013 through the end of 2018, [Lexin] originated loans to over 7.2 million users on a cumulative basis"; that, "[i]n . . . 2018, [Lexin] originated loans to approximately . . . 4.9 million active users through [its] platform, representing a compound annual growth rate, or CAGR, of 28%"; that, "[o]f all active users on [Lexin's] platform in . . . 2018, approximately . . . 80% . . . were repeat users who had made at least one transaction on [Lexin's] platform before in the same year or

in the previous year"; and that, "[a]s of December 31, 2018, [Lexin] had over 10.5 million users with an approved credit line and over 37.3 million registered users."

46.     The 2018 20-F also contained substantively the same statements as referenced in ¶ 41, *supra*, touting the variety and effectiveness of Lexin's user acquisition and retention strategies.

47.     With respect to Lexin's e-commerce channel, Fenqile.com, the 2018 20-F represented, in relevant part, that "[t]he GMV of [Lexin's] e-commerce channel amounted to . . . RMB5.8 billion (US$848 million) in 2018"; that, "[i]n . . . 2018, [Lexin] originated . . . RMB66.1 billion (US$9.6 billion) in loans, representing a 38.5% increase"; and that, as of December 31, 2018, "the average user loan balance was . . . RMB9,048 (US$1,316)."

48.     With respect to Lexin's disclosure of related party transactions, the 2018 20-F contained substantively the same statements as referenced in ¶ 37, *supra*, while disclosing additional information related to shareholder agreements and registration rights.

49.     Appended as exhibits to the 2018 20-F were substantively the same SOX certifications as referenced in ¶ 44, *supra*, signed by the Exchange Act Individual Defendants.

50.     On April 30, 2020, Lexin filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and

year ended December 31, 2019 (the "2019 20-F").  With respect to Lexin's customer base, the 2019 20-F represented, in relevant part, that, "[f]rom [Lexin's] inception in August 2013 through the end of 2019, [Lexin] originated loans to over 13.3 million users on a cumulative basis"; that, "[i]n . . . 2019, [Lexin] originated loans to approximately . . . 9.9 million active users through [its] platform, representing a compound annual growth rate, or CAGR, of 55.4%"; that, "[o]f all active users on [Lexin's] platform in . . . 2019, approximately . . . 81% . . . were repeat users who had made at least one transaction on [Lexin's] platform before in the same year or in the previous year"; and that, "[a]s of December 31, 2019, [Lexin] had over 19.4 million users with an approved credit line and over 73.3 million registered users."

51.     With respect to Lexin's e-commerce channel, related loan products, and/or Fenqile.com, the 2019 20-F represented, in relevant part, that "[t]he GMV of [Lexin's] e-commerce channel amounted to . . . RMB8.1 billion (US$1.2 billion) in 2019"; that, "[i]n . . . 2019, [Lexin] originated . . . RMB126 billion (US$18.1 billion) in loans, representing a 90.6% increase"; and that, as of December 31, 2019, "the average user loan balance was . . . RMB7,829 (US$1,125)."

52.     The 2019 20-F also contained substantively the same statements as referenced in ¶¶ 37, 41, and 43, *supra*, with respect to Lexin's related party transactions, and touting the variety and effectiveness of Lexin's user acquisition and retention strategies.

53.     Additionally, with respect to Lexin's accounting for delinquency rates, the 2019 20-F represented, in relevant part, that Lexin "define[s] delinquency rates as outstanding principal balance of on- and off-balance sheet loans that were 1 to 29, 30 to 59, 60 to 89, 90 to 179 calendar days past due as a percentage of the total outstanding principal balance of on- and off-balance sheet loans on [Lexin's] platform as of a specific date"; that "[l]oans that are delinquent for 180 days or more are charged off and are not included in the delinquency rate calculation"; that Lexin "do[es] not distinguish on the basis of the on- or off-balance sheet treatment in monitoring the credit risks of borrowers and the delinquency status of loans"; that "[d]uring 2017, 2018 and 2019, the total amount of loans that were charged off after 180 days past due was 3.59%, 4.74%, and 6.02%, respectively, of the average outstanding principal balance during the relevant period"; and that Lexin "define[s] vintage charge-off rates as, with respect to on- and off-balance sheet loans originated during a specified time period . . . the total outstanding principal balance of loans that are charged off during a specified period, divided by the total initial principal of the loans originated in such vintage."

54.     With respect to the impacts of COVID-19 on Lexin's delinquency rates, the 2019 20-F represented, in relevant part, that "[w]ith the negative impact of COVID-19 on the general economic environment as well as on [Lexin's] collection efforts, [Lexin] ha[s] experienced an increase in both delinquency rates and charge-

off rates in the first quarter of 2020, which may continue into the second and third quarter of 2020, if not longer"; and that, "[a]s the future developments of the pandemic are highly uncertain and outside [Lexin's] control, there are uncertainties with respect to the effectiveness of [Lexin's] loan performance management in the future."

55.     Appended as exhibits to the 2019 20-F were substantively the same SOX certifications as referenced in ¶ 44, *supra*, signed by the Exchange Act Individual Defendants.

56.     The statements referenced in ¶¶ 40-55, *supra*, were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lexin overstated its growth metrics; (ii) Lexin engaged in undisclosed related party transactions; (iii) following the COVID-19 pandemic, Lexin maintained low delinquency rates by providing borrowers in default new funds to make payments; and (iv) as a result, the Company's public statements were materially false and/or misleading at all relevant times.

### The Truth Emerges

57.    On August 25, 2020, shortly after markets opened, Grizzly issued a research report on Lexin alleging, among other issues, that the Company reported "unfathomably low" delinquency rates by providing borrowers in default new funds to make payments, that Lexin engaged in undisclosed related party transactions, and that a review of Lexin's web traffic called into question the Company's purported growth.

58.    Specifically, with respect to Lexin's low delinquency rates, the Grizzly report stated, in relevant part, that Grizzly "believe[s] [Lexin] has artificially deflated its default and delinquency ratio to give the appearance of a more healthy financial position"; that Grizzly "believe[s] . . . [Lexin] has been artificially increasing the maturity of the loans upon default through a feature called . . . installment on installment and . . . minimum payment"; that "this is equivalent to when your minimum credit card payment comes due . . . the company gives another extension to your minimum payment and treat[s] it as a new credit loan"; that, "[a]ccording to [Lexin] users, [Lexin] has recently been extending the maturity of their loans on the second day after they become delinquent"; and that "[t]his feature has been implemented by [Lexin] since 2016," but "was only used on loans that weren't delinquent," whereas, "[n]ow, most likely due to effects of COVID-19, the company has deployed this tactic on delinquent loans to generate a seemingly

healthy loan portfolio," whereby "[t]he users don't have to pay back the amount immediately and the company no longer has to book delinquencies." The Grizzly report concluded that "the black box is so elaborately set up that even institutional investors and insurance companies are not fully aware," and that, "[a]s long as the company can solicit more funding from investors the Ponzi scheme keeps rolling."

59.    With respect to Lexin's undisclosed related party transactions, the Grizzly report stated, in relevant part, that Grizzly "identified at least five companies that are owned by individuals who [Grizzly] believe[s] are related to [Lexin]"; that Lexin "obtained SAIC filing [*sic*] on th[ose] companies and discovered that only Beihai Jiguang had meaningful financials," including "52m RMB in revenue in 2018, of which close to 20M RMB were from loan collection services provided most likely to [Lexin]"; that "there were no costs associated with the additional 20M revenue," so "[i]t's as if the company gave this money to Beihai Jiguang for free"; that "[t]hree individuals own Beihai Caidan E-Commerce Co., Ltd ('Beihai Caidan'), which has another 4 subsidiaries"; that "[t]hose individuals are YANG Tao (50%), YUAN Kai (25%), and Ma Ming (25%)"; that "YANG Tao is also the legal representative of Beihai Caidan"; that "[o]n [Lexin]'s official website, YANG Tao was listed as the company's Vice President"; that "Yuan is the legal representative for numerous branch offices of Shenzhen Fenqile, which is one of [Lexin]'s main subsidiaries"; and that, given "the employee being legal representative [*sic*] and

combined 75% equity interest of Beihai Caidan (along with its 4 subsidiaries) owned by its employees, [Grizzly] believe[s] it is reasonable to say that [Lexin] has the ultimate control over Beihai Caidan."

60.     Finally, with respect to Lexin's website traffic calling into question the Company's purported growth, the Grizzly report stated, in relevant part, that, based on the "Baidu index for [Lexin]'s key consumer lending product Fenqile . . . from the beginning of 2017 to May 21, 2020," and a chart provided by Grizzly sourced from the Baidu index, "[o]ne can easily see that in the past couple of years the index has [been] rather flat"; that "[t]his does not make sense given that . . . [Lexin]'s registered users increased from 20.2M at IPO to 84.2M as of March 2020, or approximately 300% in total"; and that all the foregoing caused Grizzly to question "[h]ow does a company manage to grow by 3x when the website traffic on its main platform appears to be at or even declining?"

61.     Following the release of the Grizzly report, Lexin's ADS price fell $0.47 per share, or 5.52%, to close at $8.04 per share on August 25, 2020.

62.     As of the time this Complaint was filed, the price of Lexin ADSs continues to trade below the Offering price, damaging investors.

63.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Lexin's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Lexin ADSs in the IPO or purchased Lexin ADSs thereafter in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO; or (b) Lexin securities during the Class Period; and were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

65.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Lexin securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Lexin or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

66.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

68.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Lexin;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Lexin to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Lexin securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

70.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Lexin securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Lexin securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

71.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

72.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 11 of the Securities Act Against All Defendants)

73.   Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

74.   This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

75.   The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary

to make the statements made not misleading, and omitted to state material facts required to be stated therein.

76.     Lexin is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

77.     As issuer of the shares, Lexin is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

78.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

79.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

80.     Plaintiff acquired Lexin shares pursuant and/or traceable to the Offering Documents for the IPO.

81.     Plaintiff and the Class have sustained damages.  The value of Lexin ADSs has declined substantially subsequent to and because of Defendants' violations.

## COUNT II

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

82.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

83.    This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

84.    The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Lexin within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Lexin to engage in the acts described herein.

85.    The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

86.    By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## COUNT III

## (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)

87.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

88.     This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

89.     During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Lexin securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Lexin securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course

of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

90.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Lexin securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Lexin's finances and business prospects.

91.     By virtue of their positions at Lexin, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants.  Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of the

Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

92.    Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.  As the senior managers and/or directors of Lexin, the Exchange Act Individual Defendants had knowledge of the details of Lexin's internal affairs.

93.    The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Lexin.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Lexin's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Lexin securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Lexin's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Lexin securities at artificially inflated prices and relied upon the price of

the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

94.     During the Class Period, Lexin securities were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Lexin securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Lexin securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Lexin securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

95.     By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

96.    As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT IV

**(Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)**

97.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98.    During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Lexin, and conducted and participated, directly and indirectly, in the conduct of Lexin's business affairs. Because of their senior positions, they knew the adverse non-public information about Lexin's misstatement of income and expenses and false financial statements.

99.    As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Lexin's financial condition and results of operations, and to correct promptly any public statements issued by Lexin which had become materially false or misleading.

100.   Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Lexin disseminated in the marketplace during the Class Period concerning Lexin's results of operations. Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Lexin to engage in the wrongful acts complained of herein.   The Exchange Act Individual Defendants therefore, were "controlling persons" of Lexin within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Lexin securities.

101.   Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Lexin.   By reason of their senior management positions and/or being directors of Lexin, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Lexin to engage in the unlawful acts and conduct complained of herein.   Each of the Exchange Act Individual Defendants exercised control over the general operations of Lexin and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

102. By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Lexin.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  September 11, 2020         Respectfully submitted,

POMERANTZ LLP


*/s/ Gustavo F. Bruckner*
Gustavo F. Bruckner
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
gfbruckner@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

HOLZER & HOLZER, LLC
Corey D. Holzer
(*pro hac vice* application forthcoming)
1200 Ashwood Parkway, Suite 410
Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Ernesto Vela, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against LexinFintech Holdings Limited ("LexinFintech" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire LexinFintech securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired LexinFintech securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      To the best of my current knowledge, the attached sheet lists all of my transactions in LexinFintech securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

**Executed** ___August 28, 2020_____
　　　　　　　　　　**(Date)**


_____
　　　　　　　**(Signature)**


_____
　　　　　Ernesto Vela
　　　　**(Type or Print Name)**

### SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|------|------------------|------------------|-----------------|
| 07/23/2020 | Purchase | 200 | $9.32 |